## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                         Case No. 17-cr-72 (JNE/TNL)

                    Plaintiff,                         **\*REDACTED\***

v.                                                  **REPORT & RECOMMENDATION**

Shane Joshua Pearson,

                    Defendant.

Katharine T. Buzicky, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Robert M. Lewis, Assistant United States Attorney, United States Attorney's Office, 316 North Robert Street, Suite 404, St. Paul, MN 55101 (for the Government); and

Kurt B. Glaser, Smith & Glaser, LLC, 333 Washington Avenue North, Suite 405, Minneapolis, MN 55401 (for Defendant).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Shane Joshua Pearson's Motion to Dismiss Indictment (ECF No. 31) and Motion to Suppress Evidence (ECF No. 37). These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

A hearing was held on August 21, 2017. Assistant United States Attorneys Katharine T. Buzicky and Robert M. Lewis appeared on behalf of the United States of America (the "Government"). Attorney Kurt B. Glaser appeared on behalf of Defendant. The Court ordered the Government to provide complete copies of the search warrants and

18 U.S.C. § 2703(d) orders at issue in Defendant's motion to suppress.  (ECF No. 45; *see* ECF Nos. 47, 47-1 through 47-5, 48.)  Post-hearing briefing is now complete and these motions are ripe for a determination by the Court.

# I. INTRODUCTION

Defendant is a self-described nudist.  (*See, e.g.*, Mot. to Dismiss Indictment at 1, ECF No. 31; Mot. to Suppress Evidence at 2, ECF No. 37; Def.'s Suppl. Pretrial Mem. at 30, ECF No. 49.)  Defendant "operated a website selling nudist publications and videos." (Mot. to Dismiss Indictment at 1; *see* Mot. to Suppress Evidence at 2 ("He openly sold nudist materials from his website on the Internet.")  Some of these materials included images of children.

Defendant has been indicted on eight counts related to material involving the sexual exploitation of minors: one count of advertising child pornography in violation of 18 U.S.C. §§ 2251(d)(1)(A) and (e); three counts of distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); three counts of concealment money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B) and 2; and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).   (Indictment at 1-5, ECF No. 1.)  The child-pornography counts include both images and videos, which the Court will collectively refer to as "images" unless otherwise specified.

# II. MOTION TO DISMISS INDICTMENT

Defendant moves to dismiss the Indictment on grounds that the images charged do not constitute child pornography as a matter of law and seeks to examine the grand jury proceedings, arguing the grand jury was shown images out of context.  (Mot. to Dismiss

Indictment at 2-4.)  In addition, Defendant raises several constitutional challenges both facially and as applied to the statues under which he has been charged, arguing that they are void for vagueness and overbreadth, violate his rights to procedural and substantive due process, and violate his First Amendment rights and the mandatory minimum sentences they carry violate the Eighth Amendment.  (Mot. to Dismiss Indictment at 4-8.)

"The indictment  . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."  Fed. R. Crim. P. 7(c)(1).  "An indictment is constitutionally sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Nabors*, 45 F.3d 238, 239 (8th Cir. 1995) (quotation omitted).  "Indictments are normally sufficient unless no reasonable construction can be said to charge the offense."  *Id.* at 240 (quotation omitted).

## A. Nature of the Images

Defendant's focus is not the sufficiency of the Indictment.[1]  Rather, he contends that the images charged do not involve sexually explicit conduct, namely, the lascivious exhibition of genitals.  *See* 18 U.S.C. § 2256(2)(A)(v) (defining "sexually explicit conduct" to include "lascivious exhibition of the genitals or pubic area of any person").  So long as an indictment is facially sufficient, "federal criminal procedure does not

---

[1] In a single sentence, Defendant contends that the Indictment "fails to charge scienter, i.e., that the Defendant[] had knowledge of the child pornography character and content of the publications alleged to be child pornography." (Def.'s Mot. to Dismiss Indictment at 7.)  "An indictment which tracks the statutory language is ordinarily sufficient." *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013) (quotation omitted).  The counts charging Defendant with child-pornography offenses each track the language of the pertinent statute.  Defendant has offered no authority to support his contention.

provide for a pre-trial determination of sufficiency of the evidence." *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (quotation omitted). At this juncture, it is not procedurally proper for the Court to consider Defendant's challenge to the sufficiency of the evidence. *See United States v. Edge*, No. 14-cv-201 (MJD/TNL), 2014 WL 7685530, at *5 (D. Minn. Nov. 3, 2014) (determination of whether videos identified in indictment constituted child pornography was not appropriate on motion to dismiss), *adopting report and recommendation*, 2015 WL 317366 (D. Minn. Jan. 25, 2015).

While the question of whether the images "depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact[,] . . . the meaning of 'lascivious exhibition of the genitals' is an issue of law." *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001). Partly because of First-Amendment concerns, the Eighth Circuit Court of Appeals has established a procedure to address whether the images depict sexually explicit conduct as a matter of law—the very argument Defendant makes here. *See Rayl*, 270 F.3d at 714; Judicial Committee on Model Jury Instructions for the Eighth Circuit, Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.2252A (2014) [hereinafter "Model Crim. Jury Instr. 6.18.2252A"]. Before submitting the images to the jury, the district court "should conduct a preliminary review of whether materials offered by the government . . . depict sexually explicit conduct as a matter of law." *Rayl*, 270 F.3d at 714; Model Crim. Jury Instr. 6.18.2252A.

In a similar vein, Defendant argues that the images depict mere nakedness and none of the factors set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), is present. Defendant is correct that "more than mere nudity is required before an image

can qualify as 'lascivious.'"  *United States v. Kemmerling*, 285 F.3d 644, 645-46 (8th Cir. 2002); *see, e.g.*, *United States v. Lohse*, 797 F.3d 515, 520 (8th Cir. 2015*)*; *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011); *United States v. Wallenfang*, 568 F.3d 649, 657 (8th Cir. 2009); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999).  The Eighth Circuit has cited the *Dost* factors with approval as a nonexclusive list of factors to be considered in deciding whether an image is lascivious.  *Lohse*, 797 F.3d at 520-21; *Johnson*, 639 F.3d at 439-40; *Wallenfang*, 568 F.3d at 657; *Horn*, 187 F.3d at 789; *see* Model Crim. Jury Instr. 6.18.2252A.

> The *Dost* factors include: (1) whether the focal point of the image is on the minor's genital or pubic area; (2) whether the setting of the image is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the image suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended to elicit a sexual response in the viewer.

*Lohse*, 797 F.3d at 520 (citing 636 F. Supp. at 832); *see* Model Crim. Jury Instr. 6.18.2252A (adding additional factors of "whether the picture portrays the minor as a sexual object" and "the caption(s) on the pictures").  Following preliminary review by the district court, it will be up to the finder of fact to determine whether the images charged are lascivious.  *Rayl*, 270 F.3d at 714; *Kemmerling*, 285 F.3d at 646.  Defendant's arguments about the character and context of the images are essentially arguments for trial, not for dismissal of the Indictment.  *See* Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or rest that the court can determine without a trial on the merits.").

5

**B. Constitutional Arguments**

Defendant also raises a number of constitutional arguments. First, Defendant argues that the 15-year mandatory minimum for violations of 18 U.S.C. § 2251 and 5-year mandatory minimum for violations of 18 U.S.C. § 2252 violate the Eighth Amendment facially and are grossly disproportionate to this case as applied. But, as the Government points out, any as-applied challenge is not ripe as Defendant has not been convicted and sentenced under either statute. Moreover, the Eighth Circuit has repeatedly stated that it has "has never held that a sentence within the statutory range violates the Eighth Amendment." *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011) (citing *United States v. Collins*, 340 F.3d 672, 680 (8th Cir. 2013)); *see, e.g.*, *United States v. Shelabarger*, 770 F.3d 714, 717 (8th Cir. 2014) (17 years 6 months' imprisonment for violation of 18 U.S.C. § 2252(a)(2) did not violate Eighth Amendment); *United States v. Vanhorn*, 740 F.3d 1166, 1169-70 (8th Cir. 2014) (18 years 4 months' imprisonment for violations of 18 U.S.C. § 2251(a), (e) did not violate Eighth Amendment); *United States v. Patten*, 664 F.3d 247, 251-52 (8th Cir. 2011) (40 years' imprisonment for violations of 18 U.S.C. §§ 2251(a), (e), 2252A(a)(5)(B), (b)(2) did not violate Eighth Amendment); *see also United States v. Reingold*, 731 F.3d 204, 221 (2d Cir. 2013) ("Our sister circuits have similarly rejected Eighth Amendment challenges to mandatory minimum sentences in child pornography or exploitation cases.") (collecting cases).

Second, Defendant asserts that 18 U.S.C. §§ 2251, 2252, and 2256 violate the First, Fourth, Fifth, and Sixth Amendments. In his motion to dismiss, Defendant did not

specifically discuss any of the statutes or cite to any authority.  At the hearing, Defendant agreed to be more specific with his arguments in supplemental briefing.  In supplemental briefing, Defendant raises the following distinct arguments: the Court should review the grand jury proceedings because of the First-Amendment implications and 18 U.S.C. § 2256(2)(A)(v) ("lascivious exhibition of the genitals or pubic area of any person") is void for vagueness and overbreadth.

Defendant argues that this Court should conduct a review of the evidence submitted to the grand jury because First-Amendment-protected speech may have been submitted to the grand jury, citing state court cases from Massachusetts and New Mexico where courts examined materials presented to grand juries to determine whether the images fell outside the bounds of the First Amendment.  The procedure established by the Eighth Circuit in *Rayl* is designed to address Defendant's argument that the charged images are protected by the First Amendment and not within the meaning of "lascivious exhibition of the genitals" as a matter of law.  *Rayl* expressly recognized the First-Amendment implications.  270 F.3d at 714.  While Defendant argues that the circumstances of this case "demand more than a *Rayl* hearing," none of the circumstances Defendant identifies alters the thrust of his argument—that the charged images are legal as a matter of law—or bears on the ultimate legal question of whether the charged images are within the meaning of 18 U.S.C. § 2256(2)(A)(v).

Furthermore, "[i]t has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999).  "[A] grand jury may indict

7

on whatever evidence is laid before it, even evidence that would be inadmissible at trial." *United States v. Wilkinson*, 124 F.3d 971, 977 (8th Cir. 1997); *see United States v. Roach*, 28 F.3d 729, 739 (8th Cir. 1994) ("[A]n indictment returned by a legally established and unbiased grand jury 'is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.'") (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974)).  Thus, to the extent that Defendant argues the images placed before the grand jury were not properly contextualized and such context shows that images are not lascivious, these are arguments to be made at trial.

Defendant next argues that 18 U.S.C. § 2256(2)(A)(v) is overbroad and void for vagueness.  "[A] statute is facially invalid [under the First-Amendment overbreadth doctrine] if it prohibits a substantial amount of protected speech."  *United States v. Williams*, 553 U.S. 285, 292 (2008).  "Invalidation for overbreadth is strong medicine that is not to be casually employed."  *Id.* at 293 (quotation omitted).  According to Defendant, "[t]he manner of the government's prosecution against him is an assault on all nudists, their publications and their way of life."  (Def.'s Suppl. Pretrial Mem. at 37.) Without any details or examples, Defendant asserts that "a number of nudist website[s] have closed in fear of similar action from the government."  (Def.'s Suppl. Pretrial Mem. at 37.)

Section 2256(2)(A)(v) does not encompass all nude depictions of children, only those that are *lascivious*.  *See United States v. Knox*, 32 F.3d 733, 752 (3d Cir. 1994) ("A visual depiction of a child subject's genitals or pubic area . . . must be lascivious in order to be proscribed."); *United States v. Thomson*, No. CR99-0020, 1999 WL 33656538, at

\*2 (N.D. Ia. Apr. 28, 1999) (statute proscribing the possession of child pornography was not facially overboard because the "visual depiction of the subject's genitals must be 'lascivious' in order to be proscribed"); *see also Williams*, 553 U.S. at 301.  In *United States v. X-Citement Video, Inc.*, the Supreme Court rejected an overbreadth challenge to the use of "the term 'lascivious' in defining illegal exhibition of the genitals of children" for the reasons articulated by the Ninth Circuit Court of Appeals in the underlying appeal. 513 U.S. 64, 78-79 (1994).  The Ninth Circuit held that the term "lascivious" was no different than the term "lewd," "a commonsensical term whose constitutionality was specifically upheld in *Miller v. California* [413 U.S. 15 (1973)] and [*New York v.*] *Ferber*, [458 U.S. 747 (1982)]."  *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992) (quotation omitted) (relying on *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987)).  Courts have continued to reject overbreadth challenges to 18 U.S.C. § 2256(2)(A)(v).  *See, e.g.*, *United States v. Adams*, 343 F.3d 1024, 1034-35 (9th Cir. 2003); *United States v. Genin*, 594 F. Supp. 2d 412, 420 n.3 (S.D. N.Y. 2009); *see also United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014).

Defendant argues that 18 U.S.C. § 2256(2)(A)(v) is void for vagueness under the Fifth Amendment because "it fails to let citizens know the dividing point between images protected by the First Amendment and those images which are a crime to possess." (Def.'s Suppl. Pretrial Mem. at 35.)

> Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment.  A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is

> prohibited, or is so standardless that it authorizes or
> encourages seriously discriminatory enforcement.

*Williams*, 553 U.S. at 304. The Eighth Circuit has twice rejected vagueness challenges to the phrase "lascivious exhibition of the genitals or pubic area of any person" contained in 18 U.S.C. § 2256(2)(A)(v). *United States v. O'Malley*, 854 F.2d 1085, 1087 (8th Cir. 1988); *United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir. 1987).[2] *See also United States v. Parrish*, No. 2:16-cr-243, 2017 WL 3142082, at *4-5 (S.D. Ohio July 24, 2017) (rejecting vagueness challenge to 18 U.S.C. § 2256(2)(A)(v) based on *O'Malley*). The First Circuit Court of Appeals has also rejected a vagueness challenge to 18 U.S.C. § 2256(2)(A)(v) based on *X-Citement Video*. *United States v. Silva*, 794 F.3d 173, 177 (1st Cir. 2015); *see also Genin*, 594 F. Supp. 2d at 420 n.3.

For the reasons stated above, the Court recommends that Defendant's motion to dismiss the Indictment be denied.

### III. MOTION TO SUPPRESS EVIDENCE

Defendant moves to suppress evidence obtained via four search warrants and two orders under 18 U.S.C. § 2703(d). In brief, Defendant argues that the Government's applications for these investigative tools did not present sufficient facts to support their issuance and contained material misrepresentations and omissions regarding the nature of the images and the context in which such images appeared.[3] No testimony was presented at the hearing and the Court's analysis is confined to the four corners of the applications.

---

[2] At the time these cases were decided, the relevant statutory definition was numbered differently. *See O'Malley*, 854 F.2d at 1086 n.1.

[3] The Government acknowledges that there was a typographical error in some of the warrants regarding a screenname associated with nudistwonderland@aol.com. (Gov't's Resp. to Def.'s Suppl. Br. at 3-4.) The

## A. Application of *Various Articles*

The Court first dispenses with an argument that colors the remainder of Defendant's arguments: the application of *United States v. Various Articles of Merchandise, Schedule No. 287*, 230 F.3d 649 (3d Cir. 2000) [hereinafter *Various Articles*]. *Various Articles* involved the seizure of magazines devoted to the nudist lifestyle pursuant to 19 U.S.C. § 1305(a). 230 F.3d at 651. Section 1305(a) prohibits the importation of, among other things, "any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral." "All of the magazines contain[ed] numerous photographs of nude persons, including adult males and females as well as nude minors and nude teenagers." *Various Articles*, 230 F.3d at 651. Analyzing the magazines under the three-part test for determining whether a work is obscene set forth by the Supreme Court in *Miller*, the Third Circuit Court of Appeals held that the magazines were not obscene and not subject to forfeiture. *Various Articles*, 230 F.3d at 652-59.

Defendant contends that all of the still images charged in this case were taken from two nudist magazines, one of which was the same magazine considered by the Third Circuit in *Various Articles*. (Def.'s Mot. to Suppress Evidence at 15; Def.'s Suppl. Pretrial Mem. at 5.) Defendant argues that, "[a]s a matter of law, the doctrines of

screenname was listed as "Saliva source01" whereas the actual screenname was "Salvia source01." (Def.'s Suppl. Pretrial Mem. at 12 n.7; Feb. 25, 2014 Aff. ¶ 30; June 26, 2015 Aff. ¶ 30; Dec. 14, 2015 Aff. ¶ 44.) The agent had transposed the "v" and the "i." According to Defendant, "[s]alvia is an agricultural product" not to be confused with the excretion saliva, and he generated the screenname "several years ago" when he attempted to open a business selling salvia. (Def.'s Suppl. Pretrial Mem. at 12 n.7.) The error occurred in three of the four warrants at issue. As the ensuing discussion demonstrates, however, this screenname and its connection to nudistwonderland@aol.com were not material to any of the warrants at issue.

*collateral estoppel* or *stare decisi[s]* appear to stop the government from asking another court to make a factual determination whether these images depict sexually explicit conduct in the form of a lascivious exhibition of genitalia where the court in *Various Articles* found 'The magazines just do not depict lewd exhibitions of the genitals.'" (Def.'s Suppl. Pretrial Mem. at 7 (quoting 230 F.3d at 657) (internal quotation omitted).) The Third Circuit, however, expressly stated that it "should not and w[ould] not analyze nor decide th[e] case as if it were brought under child pornography laws—which is was not. The magazines were seized as offending the obscenity statute, not as offending child pornography statutes." *Various Articles*, 230 F.3d at 654. Defendant has been charged under the child pornography statutes, namely, for acts involving the sexual exploitation of children. *Various Articles* does not apply.

### B. Search Warrants

Defendant argues that the four search warrants obtained during the investigation of this matter were not supported by probable cause. Although four search warrants are at issue, a fifth warrant application, which was denied by the reviewing magistrate judge, forms the basis for Defendant's argument. The Court discusses each in turn.

#### 1. The Warrants

##### a. February 25, 2014 Warrant

The National Center for Missing and Exploited Children received a tip that the website nudistwonderland.com was offering nudist magazines in digital format which featured "nude pictures of pre-pubescent and pubescent children" and payments were being sent to the e-mail address nudistwonderland@aol.com. (Feb. 25, 2014 Aff. ¶ 21,

ECF No. 47-1.) An agent accessed nudistwonderland.com and observed "what appeared to be scanned copies of nudist magazines and nudist movies." (Feb. 25, 2014 Aff. ¶ 23.) Previews of the material for sale showed "nude images of adults and children," including some images showing children "posed in a sexual manner and their genitalia was exposed." (Feb. 25, 2014 Aff. ¶ 23.) The website listed nudistwonderland@aol.com as the contact e-mail address. (Feb. 25, 2014 Aff. ¶ 24.)

The agent then accessed the link www.nudistwonderland.com/MagazineBonus Download.html, which contained 16 links to download materials. (Feb. 25, 2014 Aff. ¶ 25.) The agent downloaded the files from these links. (Feb. 25, 2014 Aff. ¶ 25.) Based on the agent's training and experience "a number of [the downloaded files] depicted child pornography." (Feb. 25, 2014 Aff. ¶ 25.) Among the images downloaded were the following three images: (1) "Image of a naked prepubescent girl. The focus of this image is a close up photo of the girl's genitalia."; (2) "Image depicts a naked prepubescent boy sitting on the ground with his legs open and exposing his genitalia."; and (3) "Image depicts a naked prepubescent boy sitting down with his legs open and exposing his genitalia." (Feb. 25, 2014 Aff. ¶¶ 25a-c.)

The agent subsequently contacted nudistwonderland@aol.com, inquiring about payment methods. (Feb. 25, 2014 Aff. ¶ 26.) The agent received a response with payment information from nudistwonderland@aol.com. (Feb. 25, 2014 Aff. ¶ 27.) A money order was subsequently sent and the agent received an e-mail from nudistwonderland@aol.com thanking him for the order and providing two links to download materials from nudistwonderland.com. (Feb. 25, 2014 Aff. ¶¶ 28-34.) The

13

agent downloaded all of the files available from the links and, based on his training and experience, "many of them depicted child pornography." (Feb. 25, 2014 Aff. ¶ 39.) Among the images downloaded were the following four images: (1) "Image depicts two naked prepubescent boys with their arms around each other and their legs spread exposing their genitalia."; (2) "Image depicts one naked pubescent and two naked prepubescent girls. This image shows the girls from the waist down with their genitalia as the focus of the image."; (3) "Image depicts a naked prepubescent girl sitting down with her legs open and her genitalia exposed."; and (4) "Image depicts two naked prepubescent girls and a naked prepubescent boy standing in a posed manner. The focus of the picture is the children's genitalia." (Feb. 25, 2014 Aff. ¶ 39a-d.)

A magistrate judge in this District issued a warrant to search nudistwonderland@aol.com for evidence related to the sexual exploitation of minors in violation of 18 U.S.C. § 2252.

### b. May 6, 2015 Order[4]

On or about May 6, 2015, the Government applied for another warrant to search the nudistwonderland@aol.com e-mail account as well as an additional e-mail account. In relevant part, the application included the same information and image descriptions as the February 25, 2014 application as well as two additional undercover transactions with nudistwonderland@aol.com in which sets of DVDs were purchased, totaling over 250 DVDs. (May 6, 2015 Aff. ¶¶ 48-54, 57-62, ECF No. 47-2; *compare* Feb. 25, 2014 Aff. ¶¶ 21-40 *with* May 6, 2015 Aff. ¶¶ 23-41, 43.) Based on the agent's training and

---

[4] Although 15-mj-369 (FLN), the case assigned to this warrant application, remains under seal, the Government has filed the relevant documents publicly in the present matter. (ECF Nos. 47, 47-2.)

experience, some of the videos contained child pornography.  (May 6, 2015 Aff. ¶¶ 54, 62.)  The agent described seven of the videos as follows: (1) "At several points during the video the focus of the camera is on the exposed genitalia of prepubescent girls.   At various times throughout the video girls, including prepubescent girls, are seen naked and participating in a beauty pageant.  They are holding numbers and posing and smiling for the camera; their genitalia is exposed."; (2) "At various times throughout the video naked prepubescent children are shown dancing.  Additionally, naked prepubescent girls can be seen getting in/out of bunk beds.   Naked prepubescent girls are seen showering together."; (3) "This video depicts naked prepubescent children, exposing their genitalia, using exercise equipment."; (4) "This video depicts naked prepubescent and pubescent girls made up like 'devils' and dancing.  At one point in the video the focus of the camera is on the girls' exposed genitalia, and they appear to be dancing for the camera."; (5) "The video depicts several naked prepubescent children where the focus of the camera is on the children's genitalia."; (6) "The video depicts two naked prepubescent girls walking towards the camera with their genitalia exposed."; and (7) "Video depicts naked prepubescent children participating in a beauty pageant and parading around in front of adults."  (May 6, 2015 Aff. ¶¶ 54, 62.)

This warrant application was also presented to a magistrate judge in this District, but a different magistrate judge than the one who issued the February 25, 2014 search warrant.  In an order, the second magistrate judge concluded that the affidavit "fail[ed] to establish that the images in question are 'lascivious,'" and therefore "there is not probable cause to believe that evidence related to violations of Title 18 United States Code,

Section 2252 will be found on the servers the FBI seeks to search." *United States v. Application for AOL.com Search Warrants*, No. 15-mj-369 (FLN) (Order at 1, May 6, 2015.)

The magistrate judge reasoned:

> Nudity alone, even of children, does not violate Section 2252. As relevant here, a picture violates the act, only if it depicts a minor "engaging in sexually explicit conduct." The term, "sexually explicit conduct" is defined in the act to include (as relevant here), "lascivious exhibition of the genitals or pubic area of any person." The Eighth Circuit has made clear that whether a photograph constitutes, "lascivious exhibition of the genitals or pubic area," is a very fact and context specific inquiry. "[a] picture is 'lascivious' only if it is sexual in nature." *United States v. Johnson*, 639 F.3d 433 (8th Cir. 2011) (quoting *United States v. Kemmerling*, 285 F.3d 644 (8th Cir. 2001), cert denied, 537 U.S. 860 (2002).
>
> The affidavit in support of the search warrant application, describes the website associated with the two e-mail addresses that are the subject of the search warrant application, as, "selling what appeared to be scanned copies of nudist magazines and nudist movies." Although the Affidavit states that some of the images showed children, "posed in a sexual manner and their genitalia was exposed," when the Court inquired of the affiant, he was unable to describe what, if anything was "sexual" about the pose, other than that the child's genitalia was exposed.

(Order at 1-2 (alteration in original).) Accordingly, the magistrate judge concluded that "the affidavit fail[ed] to give sufficient context to these 'nudist magazines and nudist movies' for the Court to conclude that the images are sexual in nature." (Order at 2.)

### c.  June 26, 2015 Warrant

On June 26, 2015, the Government applied for another warrant to search the same e-mail accounts as the May 6, 2015 warrant application.  The affidavit in support of the warrant application referenced the same seven images discussed in the February 25, 2014 warrant and the same seven videos in the May 6, 2015 application.  (June 26, 2015 Aff. ¶¶ 25, 39, 52, 60, ECF No. 47-3.)  This time, however, the affidavit included much more robust descriptions of six of the seven videos.[5]  (*Compare* June 26, 2015 Aff. ¶¶ 52, 60 *with* May 6, 2015 Aff. ¶¶ 54, 62.)  The Government does not dispute that the agent added additional information to address the second magistrate judge's concerns.  (Gov't's Resp. to Def.'s Mot. to Suppress Evidence at 10, ECF No. 43; Gov't's Resp. to Def.'s Suppl. Br. at 5, ECF No. 50.)

These more robust descriptions include, with time marker references, statements such as the following examples: "At the 2:30 mark a naked prepubescent girl is seen with her genitalia exposed and she is thrusting her hips in a suggesting manner."; "At the 7:22 mark a naked prepubescent girl is seen dancing, gyrating, and thrusting her hips and genitalia in a sexually suggestive manner."; "At the 31:25 mark the camera lingers on the genitalia of a naked prepubescent girl who is holding an orange sign with the number 3 on it in front of her face.  The girl appears to be taking directions from adults."; "At the 45:50 mark a naked pubescent girl is posing in a suggestive manner in front of the camera.  She is holding a sign with the number 15 on it."; "At the 54:52 mark the camera focuses on a naked prepubescent girl on a stair climber.  The girl is stepping very wide

---

[5] One description, the video "At the Cottage," remained the same.  (*Compare* June 26, 2015 Aff. ¶ 52 *with* May 6, 2015 Aff. ¶ 54.)

and her genitalia is exposed to, and is the focus of, the camera."; "1:22 the camera lingers on and the focus is on the exposed genitalia of two prepubescent girls who are dancing suggestively for the camera."; "At the 4:15 mark the camera lingers and focuses on the exposed genitalia of naked prepubescent girls in a beauty contest as they walk with numbered signs.  They then pose for adults who appear to be judging them."; "At the 7:20 mark a naked prepubescent girl holding sign with the number 1 on it parades by adults and poses suggestively before them.  Her genitalia is exposed and is focus [sic] of camera."; and "At the 10:45 mark a naked prepubescent girl holding sign with the number  3 on it poses suggestively in front of adults.  The focus of the camera is on her genitalia."  (June 26, 2015 Aff. ¶¶ 52, 60.)  Numerous examples of the camera lingering and focusing on the children's genitalia are also included.  (June 26, 2015 Aff. ¶¶ 52, 60.)

A search warrant was issued for the e-mail accounts by a third magistrate judge in this District for evidence related to the sexual exploitation of minors in violation of 18 U.S.C. § 2252.

### d.  December 14, 2015 Warrant

On December 14, 2015, the Government applied for a warrant to search Defendant's residence in Nevada.  (Def.'s Mot. to Suppress Evidence at 11; Def.'s Suppl. Pretrial Mem. at 24.)  In relevant part, the December 14, 2015 affidavit contained the same image descriptions as the June 26, 2015 affidavit.  (*Compare* Dec. 14, 2015 Aff. ¶¶ 35-74, ECF No. 47-4, *with* June 26, 2015 Aff. ¶¶ 21-60.)  The warrant to search Defendant's residence was issued by a magistrate judge for the United States District Court for the District of Nevada.

18

### e.  August 1, 2016 Warrant

On August 1, 2016, the Government applied for a warrant to search certain identified Dropbox accounts associated with two e-mail address, one of which was nudistwonderland@aol.com.[6]  These Dropbox accounts had been identified by the agent after reviewing e-mail correspondence located on a computer seized from Defendant's home between nudistwonderland@aol.com and another individual.  (Aug. 1, 2016 Aff. ¶ 19, ECF No. 47-5.)  Accessing these accounts, the agent "observed that links to download titles of nudist magazines and videos were available."  (Aug. 1, 2016 Aff. ¶ 21.)  The agent then downloaded "some of the available material," which included both images and videos.  (Aug. 1, 2016 Aff. ¶ 21.)

The agent then described nine images and two videos that he "reviewed and determined to depict child pornography."  (Aug. 1, 2016 Aff. ¶ 21.)  Several of the images are described as a naked child or children either sitting or standing with their legs spread apart, exposing their genitalia.  (Aug. 1, 2016 Aff. ¶ 21a-e.)  One image is described as follows: "Image depicts three naked prepubescent girls standing by a boat. The girls are posed in a sexual manner for the camera.  Their legs are spread and the

---

[6] According to the agent's affidavit:

> "Dropbox" refers to an online storage medium on the internet accessed from a computer or electronic storage device.  As an example, online storage mediums such as Dropbox make it possible for the user to have access to saved files without the requirements of storing said files on their own computer or other electronic storage device.  Dropbox is an "offsite" storage medium for data that can be viewed at any time from any device capable of accessing the internet. Users can store their files on Dropbox and avoid having the files appear on their computer.  Anyone searching an individual's computer that utilizes Dropbox would not be able to view these files if the user opted only to store them at an offsite such as Dropbox.

(Aug. 1, 2016 Aff. ¶ 6.)

genitalia is exposed to and is the focus of the camera." (Aug. 1, 2016 Aff. ¶ 21h.) Another image has the following description: "Image depicts a naked prepubescent girl posed in sexual manner. Her hands are on her hips appearing to push her hip and waist area forward towards the camera. Her legs are spread and the genitalia are exposed." (Aug. 1, 2016 Aff. ¶ 21i.) One video is described as follows: "Video approximately one hour six minutes and 15 seconds long depicting naked prepubescent girls preparing for and participating in a nude beauty pageant. The girls are holding numeric number signs, are blindfolded and are touching other girl's [sic] heads and shoulders. There are numerous times in the video where the girl's [sic] genitalia is exposed and is the focus of the camera." (Aug. 1, 2016 Aff. ¶ 21j.) The second video is described as follows:

> Video approximately seven minutes long, likely an excerpt of a longer video based on the minute and second markers I observed. The video depicts naked prepubescent and pubescent girls dancing for the camera. Their genitalia is exposed throughout the length of the video. At approximately the 52 minute 52 second mark of the video one pubescent girl touches breast of another pubescent girl.

(Aug. 1, 2016 Aff. ¶ 21k.)

A search warrant was issued for the Dropbox accounts by a fifth magistrate judge (the fourth magistrate judge in this District) for evidence related to the sexual exploitation of minors in violation of 18 U.S.C. § 2252.

### 2. Analysis

As stated above, Defendant argues that each of the four warrants lacked probable cause. "The Fourth Amendment requires that search warrants be supported by probable cause." *United States v. Tripp*, 370 Fed. App'x 753, 757 (8th Cir. 2010). "An affidavit

establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (quotation omitted); *accord Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). The sufficiency of the affidavit is evaluated using a totality-of-the-circumstances approach. *United States v. Augustine*, 663 F.3d 367, 372 (8th Cir. 2011); *accord Mutschelknaus*, 592 F.3d at 828. "When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning." *United States v. Willis*, No. 11-cr-13 (DSD/JJK), 2011 WL 1100127, at *1 (D. Minn. Mar. 14, 2011), *adopting report and recommendation*, 2011 WL 1060981 (D. Minn. Mar. 23, 2011). "Probable cause requires only a showing of fair probability, not hard certainties." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) (citing *Gates*, 426 U.S. at 231).

> When the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. The affidavit should be examined under a common sense approach and not in a hypertechnical fashion.

*United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quotations and citations omitted). "Because reasonable minds may differ on whether a particular search-warrant

affidavit establishes probable cause, the issuing court's determination is accorded great deference." *Willis*, 2011 WL 1100127, at *2; *see Mutschelknaus*, 592 F.3d at 828 (issuing judge's probable-cause determination "should be paid great deference by reviewing courts") (quotation omitted).

Defendant argues that the warrants lacked probable cause because the affidavits lacked sufficient facts describing any sexually explicit conduct, namely, the lascivious exhibition of the genitals or pubic area. Relying heavily on the order of the second magistrate judge, Defendant argues that the agent's descriptions of the images in the affidavits supporting the warrants contained only conclusory statements and failed to provide sufficient facts for the reviewing magistrate judges to conclude that the images are sexually explicit in nature.

As stated above and as the second magistrate judge observed, more than nudity is required before an image qualifies as lascivious. *Lohse*, 797 F.3d at 520; *Johnson*, 639 F.3d at 439; *Wallenfang*, 568 F.3d at 657; *Kemmerling*, 285 F.3d at 645-46; *Horn*, 187 F.3d at 789. "A picture is 'lascivious' only if it is sexual in nature." *Kemmerling*, 285 F.3d at 646. And, as stated above and as the second magistrate judge recognized, whether a particular image is lascivious is a fact and context-specific inquiry. *See id.* at 646 ("[I]t is the duty of the trier of fact in this kind of case to examine the pictures to determine whether they are designed to appeal to the sexual appetite, as, for instance, by exhibiting a sexual coyness or focusing on the pubic area of the subject in a way that is lewd or lurid."). At the same time, "'[a]s a general matter, an issuing court does not need to look at the images described in an affidavit to determine whether there is probable

cause to believe that they constitute child pornography.  A detailed verbal description is sufficient.'"  *Mutschelknaus*, 592 F.3d at 828-29 (quoting *United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008)).  "A warrant must be supported by affidavits setting forth specific facts in order for the issuing magistrate judge to 'focus searchingly on the question of obscenity.'"  *United States v. Chrobak*, 289 F.3d 1043, 1045 (8th Cir. 2002) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986)).

The Court concludes that the information contained in each of the four warrant applications was sufficient to permit the reviewing magistrate judges to conclude that there was a fair probability that child pornography or evidence of the sexual exploitation of children would be found in the places to be searched.  In each affidavit, the agent provided more than a conclusory statement that the images constituted child pornography or a blanket assertion of lasciviousness, and instead described how the images were exhibiting the children's genitals.  *See id.* at 1045 (agent "did not simply allege the images were 'obscene,' a conclusion with which a magistrate judge might disagree"); *cf. Genin*, 594 F. Supp. 2d at 423-24.  The descriptions of the images contained in the affidavits touched on several of the *Dost* factors, including the focus on the children's genitals, total nudity of the children, suggestive nature of the children's behavior, and unnatural posing.  The affidavits also described how the images captured the children at moments when their genitalia were most exposed—such as spreading their legs and using adult exercise equipment.  *See Horn*, 187 F.3d at 790 ("After reviewing the two tapes in question, we find that they do contain lascivious exhibitions of the genitals and pubic areas of minors.  Shots of young girls are freeze-framed at moments when their pubic

23

areas are most exposed, as, for instance, when they are doing cartwheels; and these areas are at the center of the image and form the focus of the depiction."). The fact that many (if not arguably all) of the images described do not depict an overt sex act or obvious sexual behavior does not mean that these materials were not or were not intended to be lascivious. *Johnson*, 639 F.3d at 440 ("The fact that the young women in the videos were not acting in an obviously sexual manner, suggesting coyness or a willingness to engage in sexual activity, does not necessarily indicate that the videos themselves were not or were not intended to be lascivious."). "[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual." *Id.*

It is true that the second magistrate judge concluded that the Government had not made the requisite showing in the May 6, 2015 warrant application. But "'[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . ,'" which is why "'the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination.'" *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)) (internal quotation marks omitted); *see Willis*, 2011 WL 1100127, at *2. The second magistrate judge's conclusion, therefore, does not mean that the conclusions of the four other magistrate judges should be accorded any less deference, especially given that the affidavits before them did establish probable cause. Finally, in this District, warrant applications are handled by the magistrate judge on criminal duty at the time. The June 26, 2015 warrant application included additional specific facts allowing the duty "magistrate judge to focus searchingly on the question of obscenity." *Chrobak*,

289 F.3d at 1045 (quotation omitted). Defendant provides no authority to support his contention that the Government was required to appeal the second magistrate judge's order or cease using information obtained in the course of its investigation simply because it was part of the May 6, 2015 application.

Defendant also argues that the images were materially misrepresented in the affidavits because the agent did not explain the context in which the images appear and provided inaccurate descriptions. By way of example, Defendant asserts that "[t]he only reason [one of the charged images] could be considered to be a focus or close up of genitalia is because the [G]overnment only used half of the picture actually appearing in the magazine." (Def.'s Suppl. Pretrial Mem. at 8.) According to Defendant:

> This picture shows a naked girl standing in an outdoor setting. The [Go]overnment's "image" . . . only shows the bottom half of this picture. . . . The entire image spans two pages of the magazine. Because the magazine pages were scanned sequentially, the two pages comprising the entire photograph were scanned as individual files . . . . The fact that this photograph comprises two pages is not only obvious from the context of the magazine but in this instance, the digital version of the magazine came with an extra digital image that contained both halves of the picture scanned as a single image. . . . The focus of the picture is on her, not her genitalia, and given how the entire image pans out from the image selected by the [G]overnment, the picture does not contain a close up of her genitalia.

(Def.'s Suppl. Pretrial Mem. at 8.) Defense counsel has also proffered that he has reviewed all of the images charged and found them all to be "non-sexualized images of children photographed or videotaped in everyday activities," contradicting the agent's descriptions. (Def.'s Suppl. Pretrial Mem. at 8, 23-24, 28-29.)

Although framed in terms of a preliminary showing under *Franks v. Delaware*, 438 U.S. 154 (1978), addressed below in Section III.D, these arguments and conclusions go more to whether the images charged qualify as the "lascivious exhibition of the genitals or pubic area of any person" under 18 U.S.C. § 2256(2)(A)(v). Essentially, they represent what defense counsel would conclude if he were reviewing the images under *Rayl* or sitting as the finder of fact. Such arguments and conclusions are more properly raised to the district court when conducting preliminary review under *Rayl* and to the finder of fact at trial. Moreover, albeit of cold comfort to one charged with a crime, "a law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Schaffer v. Beringer*, 842 F.3d 585, 594 (8th Cir. 2016) (quotation omitted).

Based on the foregoing, the Court recommends that Defendant's motion to suppress the evidence seized in connection with the four search warrants be denied.

### C. 18 U.S.C. § 2703(d) Orders[7]

Defendant next challenges two orders the Government obtained pursuant to 18 U.S.C. § 2703(d). Under the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, the Government may obtain a court order for the disclosure of electronic communications and records of a subscriber or customer by a provider of electronic communications services if the Government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or

---

[7] The cases assigned to these applications for orders pursuant to 18 U.S.C. § 2703(d) remain under seal and the Government has filed the relevant documents under seal in the present matter. (ECF Nos. 48, 48-1 through 48-2.) While Defendant has filed some of these documents publicly, the Court has sealed its discussion of them out of an abundance of caution.

the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Defendant argues that neither application offered specific, articulable facts regarding why the images obtained constituted child pornography or how the information requested would assist in the Government's investigation.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

And, even assuming *arguendo* that the applications failed to set forth specific and articulable facts showing reasonable grounds to believe the information sought was relevant and material to the Government's investigation into the sexual exploitation of children, suppression of evidence is not an available remedy under the Stored Communications Act. *See* 18 U.S.C. §§ 2707 (civil action), 2708 (exclusivity of remedies), 2712 (civil action against United States); *see e.g.*, *United States v. Carpenter*, 819 F.3d 880, 891 (6th Cir. 2016) ("[S]uppression of evidence is not among the remedies available under the Stored Communications Act."), *cert. granted*, 137 S. Ct. 2211 (June 5, 2017); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) ("Guerrero's problem is that suppression is not a remedy for a violation of the Stored Communications Act."); *United States v. Powell*, 444 F. App'x 517, 520 (3d Cir. 2011) ("The Stored Communications Act . . . affords no suppression remedy for non-constitutional violations."); *United States v. Perrine*, 518 F.3d 1196, 1202 (10th Cir. 2008) ("[V]iolations of . . . [18 U.S.C. § 2703(d)] do not warrant exclusion of evidence.") (citing cases).[8]

---

[8] Significantly, Defendant contends only that the applications did not contain the requisite specific and articulable facts showing reasonable grounds to believe the information sought was relevant and material to the Government's investigation. He does not assert a constitutional violation. *See* 18 U.S.C. § 2708 ("The remedies and sanctions

Therefore, the Court likewise recommends that Defendant's motion to suppress be denied with respect to the two 18 U.S.C. § 2703(d) orders.

### D. Request for a *Franks* Hearing

Defendant requests a *Franks* hearing on the basis that the agent's statements regarding the nature of the images "ranged from recklessly to knowingly false," including omitting the context of the images, such as using only one page of a two-page image. (Def.'s Suppl. Pretrial Mem. at 31; *see* Def.'s Suppl. Pretrial Mem. at 5, 8, 21, 23-24, 25, 29.) As stated above, defense counsel proffers that he has reviewed all of the images and found them all to be "non-sexualized images of children photographed or videotaped in everyday activities," providing specific examples counsel believes contradict the agent's descriptions. (Def.'s Suppl. Pretrial Mem. at 8, 23-24, 28-29.) Defendant also asserts that the agent "changed his testimony about the same evidence" in the June 26, 2015 application after the May 6, 2015 application had been denied, casting doubt on the veracity of the agent. (Def.'s Suppl. Pretrial Mem. at 31; *see* Def.'s Suppl. Pretrial Mem. at 16, 22.)

Under *Franks*, a hearing must be held at the defendant's request when "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155-56; *see, e.g.*, *United States v. Gater*, 868 F.3d 657, 659 (8th Cir. 2017). The Eighth Circuit "has extended *Franks* to allow challenges to

described in this chapter are the only judicial remedies and sanctions for *nonconstitutional* violations of this chapter.") (emphasis added).

affidavits based on deliberate or reckless omissions." *Gater*, 868 F.3d at 659 (citing *United States v. Reivich*, 793 F.2d 957, 960-61 (8th Cir. 1986)). "The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010); *accord United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015). "Recklessness, however, may be inferred from the fact of omission of information from an affidavit when the material omitted would have been clearly critical to the finding of probable cause." *Conant*, 799 F.3d at 1200 (quotation omitted).

"The requirement of a substantial preliminary showing is not lightly met . . . ." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (quotation omitted); *accord United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015); *Butler*, 594 F.3d at 961. A defendant must "offer specific allegations along with supporting affidavits or similarly reliable statements." *Gonzalez*, 781 F.3d at 430. "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation." *Butler*, 594 F.3d at 961. "A *Franks* hearing must be denied unless the defendant makes a strong initial showing of deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (quotation omitted).

As an initial matter, the Court disagrees with Defendant's contention that the inclusion of additional facts in the June 26, 2015 affidavit describing the videos amounted to changed testimony. The June 26, 2015 affidavit simply included additional

30

facts showing *how* the videos were sexually explicit in nature. Turning to the heart of Defendant's argument, the Court would be hard-pressed to conclude that the alleged misrepresentations did not go to the issue of probable cause because essentially it was the sexually explicit nature of the images that gave rise to a fair probability that contraband or evidence of a crime would be found in the places to be searched. Defense counsel has done an admirable job in presenting examples to the Court of instances in which he believes the agent's descriptions were not accurate and argues well the reasons he does not believe the images qualify under 18 U.S.C. § 2256(2)(A)(v). Arguments and conclusions, however, are not enough. Likewise, Defendant's argument that the Government used only one page of a two-page image goes to the context of the image as a whole, not whether the image itself was misrepresented. Something more is needed than mere disagreement with the agent's descriptions of the images or the desire for a greater context to make the substantial preliminary showing required for a *Franks* hearing. *Cf. United States v. Perkins*, 583 F. App'x 796, 797 (9th Cir. 2014) (defendant entitled to *Franks* hearing based on affiant's inclusion of child pornography charge from another jurisdiction without stating that charge had been dropped and omission of details included in other jurisdiction's descriptions of images that suggested they were not pornographic as well as observation by other jurisdiction "that the images had no 'obvious sexual purpose'").

Accordingly, because Defendant has not made a substantial preliminary showing that the agent knowingly and intentionally made false statements, acted with reckless disregard for the truth, or made deliberate or reckless omissions, his request for a *Franks*

31

hearing must be denied.  Moreover, even assuming the specific examples discussed by counsel were misrepresented by the agent, each warrant contained multiple images which under the totality of the circumstances established probable cause.  Defendant has not shown that all the images were misrepresented or that the remaining images would not have been sufficient to support probable cause.  *See Arnold*, 725 F.3d at 898 (requiring defendant to show affidavit no longer establishes probable cause "if the false information is excised (or the omitted information is included)" to merit *Franks* hearing).

### E. *Leon* Good-Faith Exception

Lastly, even assuming *arguendo* that the affidavits underlying the four warrants failed to establish probable cause and the applications for the § 2703(d) orders did not set forth sufficient facts showing reasonable grounds to believe that the information sought was relevant and material to an ongoing criminal investigation, the *Leon* good-faith exception would apply in the present case.

"In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  *Leon*, 468 U.S. at 921.  The "exclusionary rule does not apply 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'"  *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (quoting *Leon*, 468 U.S. at 921).  "Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable."  *Id*.  This good-faith exception, however, does not apply:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

(2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

(3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and

(4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Id.* (quotation omitted). "The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant," considering the totality of the circumstance. *Id.*

"The exclusionary rule was judicially created to provide an effective deterrent against unlawful police conduct and its purposes are not served by suppressing evidence where police officers rely in reasonable good faith on a properly obtained warrant." *United States v. Trejo*, No. 14-cr-96 ADM/TNL, 2014 WL 4055567, at *6 (D. Minn. Aug. 15, 2014) (citing *United States v. Thomas*, 263 F.3d 805, 808 (8th Cir. 2001)), *aff'd*, 632 F. App'x 877 (8th Cir. 2015); *accord United States v. Jones*, 908 F. Supp. 2d 203, 214 (D. D.C. 2012); *United States v. Hardick*, Criminal Action No. 10-202, 2012 WL 4883666, at *5 (E.D. La. Oct. 15, 2012). "In accordance with this focus on police misconduct, the Supreme Court has flexibly applied the good-faith exception embraced in *Leon* to situations beyond law enforcement's reliance on a defective warrant issued by a

neutral magistrate." *Hardick*, 2012 WL 483666, at *5 (citing cases). In this vein, federal courts have applied the *Leon* good-faith exception to § 2703(d) orders. *See, e.g.*, *United States v. Lopez-Acosta*, No. 8:13CR275, 2014 WL 3828225, at *4 (D. Neb. Aug. 4, 2014); *Jones*, 908 F. Supp. 2d at 215 (citing cases); *Hardick*, 2012 WL 483666, at *6.

Here, there has been no showing that the affidavits and applications contained knowing and intentional false statements, were drafted with reckless disregard for the truth, or were tainted by deliberate or reckless omissions. *See Conant*, 799 F.3d at 1202 ("A district court may use a good-faith analysis *after* finding no knowing or reckless falsity."). There has been no suggestion that the several magistrate judges involved were anything other than neutral and detached. And, none of the affidavits and applications were so lacking in factual support or facially deficient as to preclude good-faith reliance. Defendant argues that "[n]o police officer could reasonably conclude that all nude pictures of children without limitation were illegal," and contends that this is essentially what happened here. (Def.'s Suppl. Pretrial Mem. at 33.) There are multiple instances, however, where the agent notes viewing or receiving more images than those described, demonstrating that the agent did not simply conclude that any depiction of a nude child amounted to child pornography. (*See, e.g.*, Feb. 25, 2014 Aff. ¶¶ 23, 25, 39; June 26, 2015 Aff. ¶¶ 52, 60.) The Court concludes that reliance on the warrants and orders was objectively reasonable, and Defendant's motion to suppress must also be denied on good-faith grounds.

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss Indictment (ECF No. 31) be **DENIED**.

2. Defendant' Motion to Suppress Evidence (ECF No. 37) be **DENIED**.

Date: October___18___, 2017                              _____*s/ Tony N. Leung*_____
                                                        Tony N. Leung
                                                        United States Magistrate Judge
                                                        for the District of Minnesota

                                                        *United States v. Pearson*
                                                        Case No. 17-cr-72 (JNE/TNL)

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.